```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**LANDMARK COLLEGIATE ACQUISITIONS, LLC;
and THE STANDARD AT MORGANTOWN, LLC,**

        **Plaintiffs/Counter-Defendants,**

v.                //    CIVIL ACTION NO. 1:17cv31
                              (Judge Keeley)

**CYNTHIA SOLOMON; GARY SOLOMON;
VICTOR SOLOMON, II; VIC'S GARAGE,
INC.; and STEVEN SOLOMON,**

        **Defendants/Cross-Defendants/
        Counterclaimants/Crossclaimants.**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFFS' MOTION TO DISMISS [DKT. NO. 26]**

---

On February 28, 2017, the plaintiffs, Landmark Collegiate Acquisitions, LLC ("Landmark"), and The Standard at Morgantown, LLC ("The Standard"), filed this action against siblings Cynthia Solomon, Gary Solomon, Victor Solomon, II, and Steven Solomon, as well as Vic's Garage, Inc. ("Vic's Garage") (Dkt. No. 1). Acting *pro se*, defendant Steven Solomon answered the complaint and filed a three-count counterclaim (Dkt. No. 21). Now pending is the plaintiffs' motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted (Dkt. No. 26). For the reasons that follow, the Court **GRANTS** the plaintiffs' motion.

## I. BACKGROUND

When considering the plaintiffs' motion to dismiss, the Court is obligated to accept as true the well-pleaded facts in the

counterclaim, and view them in the light most favorable to Steven Solomon. De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

**A.  The Plaintiffs' Complaint**

Landmark and The Standard are affiliated entities that sought to construct a large student housing development called "The Standard at Morgantown" in downtown Morgantown, West Virginia ("the Project") (Dkt. No. 1 at 1). The Project involved planning the development, acquiring property, and seeking approvals and variances from the local government. Id. at 1, 3-4. The plaintiffs allege that they ultimately were forced to abandon the Project because of the defendants' breaches of contract, misrepresentations, and interference. Id. at 2.

On April 16, 2015, Landmark entered into a contract with Cynthia Solomon, Gary Solomon, Victor Solomon, II, and Vic's Garage[1] ("the Seller Defendants") to purchase three parcels of real estate for the Project ("the Solomon Contract"). Id. at 4. These three parcels of real estate comprise two tracts. The First Tract is identified as Tax Map 26A, Parcel 13. Gary Solomon owns a one-fourth interest in this tract, and the remaining three-fourths is

---

[1] The plaintiffs' complaint does not allege who owns Vic's Garage, a West Virginia corporation, but Steven Solomon alleges that it is owned in one-third interests by himself, Cynthia Solomon, and Gary Solomon (Dkt. No. 21 at 15).

owned by the Estate of Lena Solomon that is anticipated to pass to defendants Cynthia Solomon, Gary Solomon, and Victor Solomon, II. Vic's Garage owns the Second Tract, identified as Tax Map 26A, Parcels 14 and 15. Id. at 4-6.

In the Solomon Contract, the individual Seller Defendants warranted that they had marketable title to the First Tract, including the right to deliver it at closing. Id. at 5-6. They further represented that they had obtained all necessary corporate consents and permissions to sell the Second Tract, and agreed to keep the terms of the contract confidential. Id. at 6-7.

Following execution of the Solomon Contract, the parties became involved in a number of legal actions. On July 2, 2015, Steven Solomon filed a complaint in the Circuit Court of Monongalia County, West Virginia ("Circuit Court"), against the Estate of Lena Solomon, in which he alleged that a 1975 deed conveying his interest in the First Tract to Lena Solomon had been forged ("fraud suit"). Id. at 7. On September 29, 2015, Landmark and the Seller Defendants, with the exception of Vic's Garage, filed a complaint for partition in the Circuit Court, seeking to clear title to the property at issue ("partition suit"). Id. at 7-8. On November 25, 2015, Steven Solomon filed a second complaint, this time against the Seller Defendants, in the Circuit Court ("contract suit"),

3

alleging that the Solomon Contract was not enforceable, in part because it had not been properly executed on behalf of Vic's Garage ("contract suit"). Id. at 8.

The Circuit Court dismissed the contract suit on March 4, 2016, primarily on the basis that Steven Solomon was not a party to the Solomon Contract and therefore lacked standing to challenge its enforceability. The Circuit Court then dismissed the fraud suit on March 9, 2016, finding that Steven Solomon had failed to sufficiently plead a cause of action for fraud, and that, in any case, his claims were barred by the statute of limitations. Id. at 9.[2]

On March 10, 2016, Morgantown's Planning Commission held a hearing on The Standard's Application for a Type III Site Plan Review for Developments of Significant Impact, which it had filed on October 2, 2015. Id. at 9. Steven Solomon appeared at the hearing and spoke in opposition to the application. In his remarks, he accused the plaintiffs of providing fraudulent statements to the Planning Commission, questioned the authenticity of studies the plaintiffs had submitted, alleged that the plaintiffs had filed a

---

[2] At the time of the scheduling conference on June 7, 2017, the parties were not aware of the status of the partition suit (Dkt. No. 33).

**LANDMARK COLLEGIATE, ET AL. v. SOLOMON, ET AL.          1:17cv31**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFFS' MOTION TO DISMISS [DKT. NO. 26]**

partition suit despite having no legal interest in the property, accused the plaintiffs of organizing an unlawful meeting of Vic's Garage, and stated that the plaintiffs had coerced Gary Solomon into signing an extension of the Solomon Contract. Id. at 10-11.

On July 28, 2016, as a result of alleged breaches by the Seller Defendants, Landmark notified them that it was terminating the Solomon Contract and demanded the return of $230,000 in earnest money. On August 4, 2016, the Seller Defendants disputed termination of the Solomon Contract and directed the escrow agent not to release the earnest money to Landmark. Id. at 11. Thereafter, on February 28, 2017, the plaintiffs filed the instant suit, seeking compensatory and punitive damages for breach of contract, defamation, and tortious interference with business and contractual relationships. Id. at 11-17.

**B.   Steven Solomon's Counterclaim**

On March 28, 2017, Steven Solomon filed a counterclaim against the plaintiffs (Dkt. No. 21). In the first count, entitled "refusal to comply with order," he alleges that, on December 15, 2015, Monongalia County Circuit Judge Philip Gaujot ordered the parties in the partition suit to "appear at mediation and negotiate in good faith." Id. at 9. According to Solomon's counterclaim, Landmark

appeared at the mediation but "refused to engage in any good faith negotiations with [him], refused to put any offer in writing, continually threaten [sic] to bury him with more legal action, tried to intimate [sic] him with Landmarks [sic] unlimited resources and high price lawyers." Id. Although Landmark produced a 60-page proposed settlement agreement the next day, Steven Solomon contends it was a one-sided document that would have given Landmark "an unfair, unlawful advantage." He alleges that Landmark refused to negotiate the contents of the agreement, and failed to mediate in good faith. Id. at 9-10.

In his second count, Steven Solomon contends that Landmark tortiously interfered with the "internal business process" of Vic's Garage, and more particularly with Steven Solomon's rights as a one-third owner. Id. at 10-11.[3] He alleges that Landmark, by its attorneys, orchestrated and conducted a special shareholder meeting for Vic's Garage. He further contends that the purpose of the meeting was to suppress his opposition to breaches of fiduciary duties by Cynthia Solomon and Gary Solomon, and to "attempt to

---

[3] The Plaintiffs move for dismissal of this count as it relates to The Standard because Steven Solomon does not make any factual allegations against it (Dkt. No. 27 at 11). However, as is plain from the title of this counterclaim, "tortious interference with business relationship against Landmark," Steven Solomon does not seek to state a claim against The Standard.

legitimize the infamous" Solomon Contract seven months after it had been signed without the requisite corporate resolution. Id. at 10. As a result, Steven Solomon contends that Landmark removed him "from the purchasing process, removed his ability to protect his interest in Vic's, [and] removed his ability to stop corporation actions not in the best interest of the corporation and the Shareholders." Id. at 11.

Liberally construed, the third count alleges that the plaintiffs engaged in three acts of fraud. Id. at 11-14. First, The Standard filed its application with the Planning Commission, indicating it was the "owner," although it did not yet own the properties at issue. Id. at 12. Second, The Standard submitted a traffic study to the Planning Commission, that concluded the Project would result in a decrease in traffic. According to Steven Solomon, this was fraudulent because "[n]o unbiased person would believe that a development of the magnitude of Standard's project would result in a net decrease in the number of vehicles." Id. at 12-13. Third, the plaintiffs acted fraudulently by filing the instant lawsuit, which contains false allegations against him. Id. at 13.

**LANDMARK COLLEGIATE, ET AL. v. SOLOMON, ET AL.**  1:17cv31

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFFS' MOTION TO DISMISS [DKT. NO. 26]**

## II. STANDARDS OF REVIEW

**A.  Pro Se Pleadings**

The Court must liberally construe pro se pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A pro se complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which the plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.  Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim upon which relief can be granted." When reviewing the sufficiency of a complaint, a district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

8

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In order to be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

### III. DISCUSSION

**A.    Count I: Refusal to Comply with Order**

In support of their motion to dismiss the first count of Steven Solomon's counterclaim, the plaintiffs argue that there is no statute or cause of action that would permit Steven Solomon to recover money damages from Landmark for failing to comply with

9

Judge Gaujot's mediation order (Dkt. No. 27 at 11-13). Rather, they contend his sole remedy was to seek sanctions against it or move to hold it in contempt in the Circuit Court. <u>Id.</u> at 12. In response, Steven Solomon outlines the allegedly unfair and fraudulent nature of Landmark's proposed settlement agreement (Dkt. No. 31 at 2-3). He also states that "[i]t doesn't matter what phrase is used to describe Landmark's actions. Steve Solomon can prove a set of facts in support of his claim which would entitle him to relief." <u>Id.</u> at 3.

Pursuant to W. Va. R. Civ. P. 16 and W. Va. Trial Court Rule 25.03, the Circuit Court has authority to refer a case for mediation. W. Va. Trial Court Rule 25.10 provides, in part, as follows:

> If a party or its representative, counsel, or insurance carrier fails to appear at the mediation session without good cause or appears without decision-making discretion, the court <u>sua sponte</u> or upon motion may impose sanctions, including an award of reasonable mediator and attorney fees and other costs, against the responsible party.

<u>See also</u> Syl. Pt. 3, <u>Casaccio v. Curtiss</u>, 718 S.E.2d 506 (W. Va. 2011) (holding that circuit courts may sanction insurance carriers for failing to attend court-ordered mediation). In addition, W. Va. Trial Court Rule 25.11 provides:

> No party may be compelled by these rules, the court, or the mediator to settle a case involuntarily or against

the party's judgment. All parties involved in mediation, however, and their respective representatives, counsel, and insurance carriers shall participate fully, openly and knowledgeably in a mutual effort to examine and resolve issues.

The Supreme Court of Appeals of West Virginia has discussed a circuit court's discretion to consider sanctions for "failure to meaningfully participate in mediation." Murthy v. Karpacs-Brown, 788 S.E.2d 18, 26 (W. Va. 2016).

Here, Steven Solomon has alleged that Landmark failed to engage in good faith mediation as ordered by the Circuit Court (Dkt. No. 21 at 9-10). Clearly, he had recourse for any alleged bad-faith mediation to the Circuit Court, whose authority to enforce its mediation order through sanctions and contempt is undisputed.[4] There simply is no independent viable cause of action encompassing Steven Solomon's allegations. Therefore, the Court **GRANTS** the plaintiffs' motion to dismiss the first count of Steven Solomon's counterclaim for failure to state a claim.

**B.   Count II: Tortious Interference with Business Relationship**

In support of their motion to dismiss the second count of Steven Solomon's counterclaim, the Plaintiffs argue that he has

---

[4] See State ex rel. Richmond Am. Homes of W. Va. v. Sanders, 697 S.E.2d 139, 146-49 (W. Va. 2010) (discussing the scope of courts' inherent power to sanction); see generally Goodyear Tire & Rubber Co. v. Haeger, 137 S.Ct. 1178, 1186 (2017).

11

failed to state a claim that they tortiously interfered with his business relationship with Vic's Garage (Dkt. No. 27 at 10).[5] More specifically, they contend that Steven Solomon "does not explain how Landmark tortiously interfered with his rights as a shareholder, what monetary harm that caused him, and how it caused that harm." Id. In response, Steven Solomon reiterates that two Landmark attorneys participated in a special shareholder meeting of Vic's Garage on November 30, 2015 (Dkt. No. 31 at 4).

"To establish prima facie proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that

---

[5] The Plaintiffs also suggest that Steven Solomon's factual allegations may be construed to include a claim that Landmark interfered with the Solomon Contract (Dkt. No. 27 at 9). Steven Solomon responded that he "made no '[a]llegation of interference with an agreement between Landmark and Vic's Garage'" (Dkt. No. 31 at 4). Even assuming that Steven Solomon's allegations can be divided as the Plaintiffs suggest, however, "as a general rule, only a party outside of a contractual relationship can be liable for tortious interference." Herman Strauss, Inc. v. Esmark Inc., 2008 WL 313857, at *3 (N.D.W. Va. Feb. 4, 2008) (citing Torbett v. Wheeling Dollar Sav. & Tr. Co., 314 S.E.2d 166, 173 (W. Va. 1984)); see also Hatfield v. Health Mgmt. Assocs. of W. Va., 672 S.E.2d 395 (W. Va. 2008) ("Our law is clear that, in order for a party to be held liable for intentional interference with a contractual relationship, the party must be someone outside of the contractual relationship."). Therefore, Landmark cannot be liable for interfering with the Solomon Contract to which it was a party.

the interference caused the harm sustained; and (4) damages." Syl. Pt. 5, Hatfield v. Health Mgmt. Assocs. of W. Va., 672 S.E.2d 395 (W. Va. 2008) (quoting Syl. Pt. 2, Torbett v. Wheeling Dollar Sav. & Tr. Co., 314 S.E.2d 210 (W. Va. 1983)).

Here, contrary to the Plaintiffs' argument, Steven Solomon has sufficiently pleaded three elements of his tortious interference claim. First, as a one-third shareholder, he had a "business relationship" with Vic's Garage. Second, he alleges that Landmark, "a party outside that business relationship," committed an "intentional act of interference" when it orchestrated a special shareholder meeting to overcome his opposition to actions taken by Vic's Garage. Third, when liberally construed, his allegations satisfy the causation element by alleging that Landmark's interference with the shareholder meeting removed him from the purchasing process, thus preventing him from protecting his own interests and the interests of Vic's Garage.

Steven Solomon has failed, however, to sufficiently plead the existence of damages. He alleges only that "Landmark's tortious interference resulted in financial loss present and in the future" (Dkt. No. 21 at 11). This bare allegation is merely a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal citation omitted). Although "there is no

13

requirement to plead precise damages," Job v. Simply Wireless, Inc., 160 F. Supp. 3d 891, 900 n.10 (E.D. Va. 2015) (noting that Twombly requires a plausible basis for liability not the amount of damages incurred), a pleading must nonetheless state with particularity that the claimant has actually incurred damages. See Waerness v. Allscripts Healthcare US, LP, 2015 WL 545788, at *5 (E.D.N.C. Feb. 10, 2015) ("[S]he has failed to allege with particularity that such deception resulted in any damages." (emphasis added)). Therefore, because Steven Solomon has failed to allege damages with particularity, the Court **GRANTS** the plaintiffs' motion to dismiss the second count of his counterclaim.

**C.  Count III: Fraud**

In support of their motion to dismiss the third count of Steven Solomon's counterclaim, the plaintiffs argue that he has failed to meet Fed. R. Civ. P. 9(b)'s heightened pleading requirement for allegations of fraud (Dkt. No. 27 at 6-8). Steven Solomon's response presents no substantive argument to the contrary (Dkt. No. 31 at 5).

"The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; [(3)] that

14

plaintiff relied on it and was justified under the circumstances in relying upon it; and [(4)] that he was damaged because he relied on it." Syl. Pt. 5, Folio v. City of Clarksburg, 655 S.E.2d 143 (W. Va. 2007) (internal quotation and citation omitted). Rule 9(b) further provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Fourth Circuit has explained that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 782 (4th Cir. 1999).

Here, even assuming that he has alleged with sufficient particularity that the plaintiffs made material and false statements when they filed the Planning Commission application, traffic study, and this lawsuit (Dkt. No. 21 at 11-14), Steven Solomon has utterly failed to allege how he justifiably relied on those statements in a manner that damaged him. See Folio, 655 S.E.2d 143, Syl. Pt. 5. Therefore, because Steven Solomon has

15

failed to state a claim for fraud, the Court **GRANTS** the Plaintiffs' motion to dismiss the third count of his counterclaim.

## IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** the plaintiffs' motion to dismiss (Dkt. No. 26), and **DISMISSES** Steven Solomon's counterclaim as follows (Dkt. No. 21):

1. Count One - **WITH PREJUDICE**;
2. Count Two - **WITHOUT PREJUDICE**; and
3. Count Three - **WITHOUT PREJUDICE.**

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record and to the pro se party, certified mail and return receipt requested.

DATED: June 21, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE